UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

WASEEM DAKER,                              )
                                          )
              Plaintiff,                   )
                                          )
v.                                         )          CV621-003
                                          )
TIMOTHY WARD, *et al.*,                    )
                                          )
              Defendants.                  )

## ORDER AND REPORT AND RECOMMENDATION

*Pro se* prisoner Waseem Daker filed this 42 U.S.C. § 1983
Complaint alleging various constitutional violations "arising at Smith
State Prison." *See* doc. 1 at 1. Because he is a prisoner seeking "redress
from a governmental entity or officer or employee of a governmental
entity," the Court must screen his Complaint. 28 U.S.C. § 1915A. Also
pending is Daker's motion to expedite this review. Doc. 13. Because the
Court now undertakes that review, that motion is **DISMISSED**, as moot.
Doc. 13.

## I.   BACKGROUND

This Court knows Waseem Daker's vexatious litigation history all
too well. *See, e.g.*, *Daker v. Head*, CV614-047 (S.D. Ga. May 19, 2014);
*Daker v. Kenton*, CV614-076 (S.D. Ga. July 21, 2014); *Daker v. Toole*,

CV414-253 (S.D. Ga. Nov. 21, 2014); *Daker v. United States*, CV615-049 (S.D. Ga. May 6, 2015); *Daker v. Bryson*, CV616-057 (S.D. Ga. May 23, 2016); *Daker v. United States*, CV416-158 (S.D. Ga. June 20, 2016); *Daker v. Bryson*, CV617-079 (S.D. Ga. June 9, 2017); *Daker v. Dozier*, CV617-110 (S.D. Ga. Aug. 11, 2017); *Georgia v. Daker*, CV618-006 (S.D. Ga. Jan. 18, 2018); *Daker v. Dozier*, CV618-032 (S.D. Ga. Mar. 26, 2018); *Daker v. Dozier*, CV618-073 (S.D. Ga. July 2, 2018); *Daker v. Bland*, CV620-090 (S.D. Ga. Sept. 15, 2020); *Daker v. Ward*, CV622-036 (S.D. Ga. May 24, 2022). Daker referenced this voluminous litigation history in his Complaint, acknowledging he has "too many previous lawsuits to name or remember." Doc. 1 at 1.[1]

The Eleventh Circuit frequently notes Daker's status as a "serial litigant", observing he has "clogged the federal courts with frivolous litigation by submitting over a thousand *pro se* filings in over a hundred actions and appeals in at least nine different federal courts." *Daker v. Jackson*, 942 F.3d 1252, 1255 (11th Cir. 2019) (quoting *Daker v. Comm's,*

---

[1] Many of Daker's prior lawsuits have been dismissed as frivolous or for failure to state a claim. *See Daker v. Ward*, 999 F.3d 1300, 1302 (11th Cir. 2021). He has amassed far more than the requisite three strikes required to bar him from appearing *in forma pauperis* absent satisfaction of 28 U.S.C. § 1915(g)'s "imminent danger" exception. *Id.* at 1302-03. In this case, to avoid the three-strikes bar, he has paid the filing fee. *See* docket entry dated February 4, 2021.

*Ga. Dep't of Corr.*, 820 F.3d 1278, 1281 (11th Cir. 2016) (internal quotation marks and alterations omitted)); *see also Ward*, 999 F.3d at 1302 ("Daker is an extraordinarily prolific serial litigant in the federal courts."). The Court of Appeals recently affirmed an injunction against Daker issued by the Northern District of Georgia, which imposed permanent filing restrictions on Plaintiff in that district. *Daker v. Governor of Georgia*, 2022 WL 1102015, at *2 (11th Cir. Apr. 13, 2022). Recently, Magistrate Judge Epps of this Court ordered Daker to show cause why similar filing restrictions should not be imposed here. *See Daker v. Ward*, CV622-036, doc. 2 (S.D. Ga. July 19, 2022).

With that history in mind, the Court turns to the substantive allegations of Daker's instant 86-page Complaint. *See* doc. 1. His claims arise under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). *Id.* at 8. He identifies thirty-seven named defendants along with unknown "John and Jane Doe" defendants. *Id.* at 7-8. Among the named defendants are the State of Georgia, the Georgia Department of Corrections ("GDC"), the GDC

Commissioner and various GDC officials,[2] the Smith State Prison ("SSP") Warden and various SSP officials and correctional officers, the SSP dentist and dental assistant, and the SSP chaplain.[3]  *Id.* at 9-12.

Daker alleges he has been in the GDC's custody since 2012 and housed at Smith State Prison since October 15, 2020.  Doc. 1 at 14.  After providing a general overview of the "GDC Tier Program," *id.* at 15-23, generalized allegations about the conditions on "Tier II," *id.* at 24-30, and the process for placement on "Tier II," *id.* at 30-32, Daker recounts his own placement into "Tier II" administrative segregation.  *Id.* at 32.  Despite asserting on the first page of his Complaint that this lawsuit "deals w/ facts arising at Smith State Prison," *id.* at 1, he begins with his placement into "Tier II Phase II" while at Macon State Prison in December 2018.  *Id.*  He then discusses the continuation of his administrative segregation when he was transferred to Valdosta State

---

[2]  For ease of reference, the Court will adopt Daker's naming conventions for the defendants.  Therefore, the "GDC Defendants" includes Ward, Koon, Upon, Toole, Holt, Nelson, Ammons, Lewis, Turner, Myrick, Shepherd, and Crickmar.  *See* doc. 1 at 9.

[3]  The "SSP Defendants" include Adams, McFarlane, Epperson, Brown, Jarriel, Cox, Whitfield, Jackson, Martin, Hartmyer, Osborn, Schleicher, Wright, Mosely, Ramos, Hill, Waycaster, Shuemake, Hilton, Roberts, Thomas, Robinson, and Champion.  Doc. 1 at 10-11.

Prison, where officials allegedly continued to assign him to "Tier II." *Id.* at 33-38. Then, he discusses his transfer to Smith State Prison where he was placed on the "Tier II Program," allegedly without a hearing or an opportunity to appeal the placement. *Id.* at 39.

Daker then expounds upon the "GDC Disciplinary Procedure," including the process for issuing disciplinary reports, conducting hearings, and appealing unfavorable determinations. *Id.* at 39-40. He contends that he is not allowed to call any witnesses during any of his disciplinary hearings, though he does not identify where those hearings occurred and who conducted them. *Id.* at 40.

Next, Daker explains the Muslim practice of wearing "fist-length" beards, which for him is "approximately a three-inch beard." Doc. 1 at 40. According to Daker, current GDC policy requires prisoners to maintain "a beard only up to half-inch long." *Id.* He also alleges that the GDC Defendants "maintain a custom of enforcing their own grooming regulations through disciplinary action, threat of use of force, and its actual use, including but not limited to use of chemical agents, such a pepper-spray, pepperball, MK-4 and MK-9, and tasers." *Id.* at 41. He claims this custom "has resulted in uses of force" against him on six

occasions: June 13, 2018, September 18, 2018, February 18, 2019, July 12, 2019, September 25, 2019, and April 3, 2020. *Id.* He contends that these "forcible shavings" were done using clippers that were not sanitized in accordance with GDC policy. *Id.* at 43. He also expressly alleges that these six shaving events occurred at either Macon State Prison or Valdosta State Prison. *Id.* He also describes his efforts to obtain a religious exemption from the Valdosta State Prison warden, deputy wardens, and chaplain, and his correspondence to GDC officials Ward, Toole, Ammons, and Turner requesting the same. *Id.* at 44. Relative to Smith State Prison, Daker only alleges he was "threatened" with a "forcible shaving" by SSP Defendant Hartmeyer on October 21, 2020, and by SSP Defendant Adams on December 2, 2020. *Id.* at 48.

Next, Daker takes issue with SSP officials denying him access to a "JPay tablet," which he explains is used to send and receive emails and access photos, forms of entertainment, and educational materials. *See* doc. 1 at 51. He alleges he made numerous requests for a "JPay tablet" from SSP Defendant Champion but was "ignored." *Id.* at 53. He grieved the issue but SSP Defendant Mosely "returned it to [him] unprocessed and refused to process" the grievance. *Id.* SSP Defendants Ramos,

Mosely, Brown, and Ward also allegedly "ignored" Daker's repeated requests for a tablet.  *Id.* at 53-55.

Daker also complains about lack of phone access for Tier II prisoners, doc. 1 at 55, 77, insufficient access to legal research materials on Tier II, *id.* at 55-58, and inability to attend religious services or receive religious materials while on Tier II, *id.* at 58-59.  He also claims he has "obstructive sleep apnea" and is prescribed a Continuous Airway Pressure, or CPAP, machine, but other prisoners in Tier II trip the breaker in their cells, cutting off power to Daker's cell.  *Id.* at 60-61.  He is unable to use his CPAP machine without electricity.  *Id.*  He alleges he complains about this to various SSP defendants, including Adams, McFarlane, Epperson, Jackson, Whitfield, Cox, Martin, Waycaster, Shuemake, Robinson, and Thomas, but they have "repeatedly refused to do anything about it."  *Id.* at 61.

He also gripes about other conditions on Tier II at SSP.  He contends the spotty electricity—caused by his fellow prisoners—leaves prisoners without any light.  Doc. 1 at 63.  He complains about the painted-over windows, which block the sunlight.  *Id.* at 64.  He complains about the dental care, including the length of time it takes the dentist to

see Tier II prisoners, his multiple unsuccessful requests to see the dentist, and SSP's failure to provide Sensodyne toothpaste. *Id.* at 64-66. He complains about the food and beverage trays provided to "lockdown prisoners." *Id.* at 67-68. He complains about his fellow prisoners projecting "feces, urine, or mixtures of the two" which then sits for "hours" until it is cleaned up, or flooding the Tier II dorm with "toilet water with feces and urine in it." *Id.* at 68-75. He complains that his complaints about these problems are often ignored by prison officials. *Id.* He also alleges there is a mouse infestation and an overall lack of cell sanitation. *Id.* at 75-76. He claims his dorm is not provided outdoor exercise, and his grievances about the issue are not processed. *Id.* at 76. He contrasts the Tier II conditions with those of the general prison population. *Id.* at 79-80.

Finally, Daker discusses alleged violations of his right to court access. Doc. 1 at 80-82. He argues the requirement that he rely on carbon paper, as compared to photocopies, is not sufficient to comply with court rules requiring him to attach exhibits to his filings. *Id.* at 80-81. He takes issue with the amount of paper provided to him each week. *Id.* at 81. He also complains that SSP Defendants (he does not make it clear

which "Defendants at Smith SP") have not made him any accommodation to review "legal CD-ROM's, flash drives, and SD-cards" necessary for him to pursue his state habeas petition. *Id.* at 81-82.

Daker then summarizes his legal claims. Doc. 1 at 82-84. He claims that GDC policies violate substantive due process, doc. 1 at 82, he claims that his placement on Tier II at SSP on October 15, 2020 and his "July 16, 2014, placement on Tier II" violates RLUIPA, substantive and procedural due process, the First Amendment, the Eighth Amendment, and the Fourteenth Amendment Equal Protection Clause, *id.* at 82-83, he claims that "DRs used to place or keep Plaintiff on Tier II" violate RLUIPA and substantive and procedural due process, *id.* at 83, he claims the conditions on Tier II violate the First Amendment, RLUIPA, procedural due process, and his right of access to the courts, *id.*, he claims his placement in Tier II violates the Eighth Amendment, *id.* at 84, and he claims his inability to access photocopies or "legal CD-ROM's" violates his right of access to the courts, *id.* He seeks "declaratory judgments," "prospective, equitable, and injunctive relief," and nominal, compensatory, and punitive damages. *Id.*

Plaintiff also filed a Motion for Access to Photocopying, doc. 3, and a Renewed and Supplemental Motion for Access to Photocopying, doc. 4. The District Judge denied those motions.  Doc. 15.  Daker has appealed that decision.[4]  Doc. 17.

## II.   ANALYSIS

Notwithstanding Daker's payment of the filing fee in this case, his Complaint, or any portion of it, must be dismissed if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted;[5] or (2) seeks monetary relief from a defendant who is immune to such relief."

---

[4] Despite Daker's appeal, this Court retains jurisdiction over his Complaint.  *See, e.g. State of Alabama v. Envtl. Prot. Agency*, 871 F.2d 1548, 1553-54 (11th Cir.1989) (holding district court retained jurisdiction to grant summary judgment and to dismiss suit despite pending interlocutory appeal of district court's issuance of preliminary injunction) (citing *United States v. White*, 846 F.2d 678, 693 n. 23 (11th Cir.1988) (explaining that pending interlocutory appeal did not divest district court of jurisdiction over motion to dismiss indictment)); *Hamer v. Campbell,* 358 F.2d 215, 223 (5th Cir. 1966) (holding that denial of preliminary injunction and filing of interlocutory appeal did not divest district court of jurisdiction over supplemental complaint) (quoting *United States v. Lynd*, 321 F.3d 26, 28 (5th Cir.1963) ("[A]n appeal from the denial or granting of a preliminary injunction should not ordinarily delay the final trial of the case on its merits.")); *see also Larkin v. Lawrence*, 2010 WL 724107, at *3 n.4 (S.D. Ga. Mar. 2, 2010).

[5] A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[ ] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

28 U.S.C. § 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted).

A claim is "malicious if it was filed with the intention or desire to harm another," *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005) (internal quotation marks omitted), or if it generally constitutes an abuse of the judicial process, *see Sears v. Haas*, 509 F. App'x 935, 936 (11th Cir. 2013) (per curiam) (holding that prisoner's "failure to comply with court rules requiring disclosures about [his] previous litigation" may constitute "an abuse of the judicial process warranting dismissal" of the party's pleading as frivolous or malicious under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1)). In addition, "complaints that are plainly part of a longstanding pattern of abusive and repetitious lawsuits" are "malicious" for purposes of §§ 1915A or 1915(e). *Horsey v. Asher*, 741 F.2d 209, 213 (8th Cir. 1984).

The Middle District of Georgia, in screening a similar Complaint filed by Daker, discussed the standard for *sua sponte* dismissal of frivolous or malicious claims:

> District courts are " 'vested with especially broad discretion' in determining" whether a dismissal for frivolousness or maliciousness is warranted. *Bailey v. Johnson*, 846 F.2d 1019, 1020-21 (5th Cir. 1988) (per curiam). Courts have summarily dismissed actions as frivolous or malicious where the complaints "merely repeat[ ] pending or previously litigated claims," even if the parties and claims in the two pending suits are not precisely the same. *See id.* at 1021 ("[R]epetitious litigation of virtually identical causes of action is subject to dismissal under 28 U.S.C. § 1915(d) as malicious."); *Van Meter v. Morgan*, 518 F.2d 366, 367 (8th Cir. 1975) (per curiam) (affirming dismissal of complaint as frivolous where plaintiff had already filed a "pro se complaint which deals with issues directly related, if not identical to" issues in dismissed complaint); *Bazemore v. Casey*, 433 F. App'x 326, 327 (5th Cir. 2011) (per curiam) (finding district court did not abuse its discretion in dismissing case as malicious where "both the instant case and [the] prior case involve 'the same series of events' and contain allegations of 'many of the same facts' "); *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993) ("[I]t is 'malicious' for a pauper to file a lawsuit that duplicates allegations of another pending federal lawsuit by the same plaintiff."); *Daley v. U.S. Attorneys Office*, 538 F. App'x 142, 143 (3d Cir. 2013) (per curiam) (unpublished opinion) (affirming dismissal of complaint that "duplicated many of [the plaintiff's] previous allegations" in other cases); *McWilliams v. Colorado*, 121 F.3d 573, 574 (10th Cir. 1997) ("[R]epetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious." (internal quotation marks omitted) (first alteration in original)).

*Daker v. Ward*, 2021 WL 2150763, at *3 (M.D. Ga. Jan. 5, 2021) (footnote omitted), *adopted* 2021 WL 2143338 (M.D. Ga. May 26, 2021).

A.   Plaintiff's Claims Against the GDC Defendants

Plaintiff includes several claims and allegations about GDC policies in general.   He claims that GDC policies regarding Tier II segregation violate substantive due process.   Doc. 1 at 82-83.   Indeed, the first portion of his "Statement of Facts" includes an "Introduction to the GDC Tier Program."   *Id.* at 15-32.   Throughout his Complaint he also makes general allegations about GDC customs, *see, e.g., id.* at 67, 77, or complains about practices that prisoners generally might experience, *see, e.g., id.* at 51, 58, 79.   These allegations focus on his placement and retention on Tier II, including his complaints about the "DR" process.   *See generally id.* at 82-84.   He also includes several allegations about the GDC grooming policy.   *See id.* at 40-48.   His allegations against the GDC Defendants are not based on their personal participation in any of the incidents discussed, but are instead based on their design, approval, or implementation of the offending policies.   *See id.* at 29-30.

Plaintiff's claims against the GDC and the GDC Defendants should be dismissed as duplicative, redundant, frivolous and malicious.   As the

Middle District of Georgia observed about Daker's claims in 2017: "Plaintiff has raised these policy-based claims against the GDC Defendants over and over again." *Daker v. Bryson*, 2017 WL 11427081, at *3 (M.D. Ga. Dec. 29, 2017) *adopted* 2018 WL 9598914 (M.D. Ga. July 19, 2018).  It went on to observe that "Plaintiff should by now be well aware" that this type of "intentional, duplicative litigation" is malicious and should be dismissed.  *Id.*  In that case, the Court identified the following repetitive claims against the GDC:

> (1) Defendants' beard length grooming restrictions;
>
> (2) Defendants' unnecessary and excessive use of force to enforce their beard length grooming restrictions, and their use of unsanitized and/or broken clippers to enforce such restrictions;
>
> (3) the denial of due process in assigning Plaintiff to the Tier program and retaining him in that program;
>
> (4) the denial of due process with respect to various disciplinary reports;
>
> (5) the denial of First Amendment rights in the Tier program, including but not limited to restrictions on access to books, photographs, correspondence courses, radios, CD players, cassettes, JPay tablets, phone access, and mail;
>
> (6) insufficient access to the law library;
>
> (7) Defendants' infringement upon Plaintiff's religious liberties, including but not limited to restrictions on the services Plaintiff was permitted to attend, a requirement that Plaintiff be required to strip to his underwear in front of

female prison guards under certain circumstances, and the denial of prayer oils, Islamic publications, recordings, and educational materials, a digital Qu'ran, miswak, halal hygiene products and food, and congregational prayer;

(8) denial of adequate food on the Tier program;

(9) denial of adequate medical care on the Tier program;

(10) denial of adequate dental care on the Tier program;

(11) the conditions of the cells in the Tier program, including exposure to feces, denial of cell sanitation, denial of flushing toilets, denial of showers, and denial of outdoor exercise;

(12) denial of the ability to participate in programs affecting parole eligibility while in the Tier program;

(13) denial of ability to send outgoing mail on the Tier program;

(14) denial of due process regarding personal property seizures; and

(15) restrictions upon Plaintiff's access to the courts for reasons including but not limited to his inability to receive photocopies, restrictions on the amount of paper he could receive in a week, denial of access to his stored legal materials, denial of access to legal CD-ROMs and other materials, and inadequate indigent mail, grievance, and open records requests policies.

*Id.* It therefore found the claims against the GDC Defendants to be "malicious and an abuse of the district court process." *Id.* at *5. All of Plaintiff's claims against the GDC Defendants in this case were identified by the Middle District as duplicative in 2017. *Compare id. with* doc. 1 at 82-84. Between the Middle District's decision and Daker's filing of the

15

instant Complaint in January 2021, he filed additional Complaints against the GDC and GDC officials with similar claims.  *See, e.g., Daker v. Ward*, 2021 WL 2150763, at *3, (M.D. Ga. Jan. 5, 2021), *adopted*, 2021 WL 2143338 (M.D. Ga. May 26, 2021).  Daker's persistence in filing these same claims in multiple districts only underscores the repetitious, malicious nature of Daker's instant lawsuit.

All of Daker's claims against the GDC[6] and the GDC Defendants have been included in prior litigation and should, therefore, be **DISMISSED**.  *See Childs v. Miller*, 713 F.3d 1262, 1265 (10th Cir. 2013) ("When a pro se litigant files complaints that are repetitive, duplicative of other filings, without merit, or frivolous, he abuses the district court process."); *see also Daley*, 538 F. App'x at 144 ("Daley's complaint is also malicious as it repeats claims that he unsuccessfully previously litigated twice before in the District Court."); *Caballero v. Robinson*, 95 F.3d 49

---

[6]  Additionally, to the extent Plaintiff seeks to raise § 1983 claims against the State of Georgia or the GDC, such claims are subject to dismissal on immunity grounds. The State of Georgia, and the GDC as a state entity, are entitled to Eleventh Amendment immunity.  *See Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989) ("The Eleventh Amendment bars [the plaintiff's § 1983] action against the Georgia Department of Corrections . . . .  This Eleventh Amendment bar applies regardless of whether the plaintiff seeks money damages or prospective injunctive relief."); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989) (states and governmental entities that are considered "arms of the state" are not considered "persons" capable of being sued under § 1983).

(Table), 1996 WL 457298, at *1 (5th Cir. 1996) (holding that a "plainly duplicative" lawsuit was "subject to dismissal as malicious and abusive" even though plaintiff named additional defendants in later-filed case).

### B.   Shotgun Complaint

Not only is Daker's Complaint malicious, it is also a shotgun pleading.   The Eleventh Circuit has engaged in a "thirty-year salvo of criticism aimed at shotgun pleadings, and there is no ceasefire in sight." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321, 1321 n.9 (11th Cir. 2015) (collecting cases).   The crux of the Court's admonishment of shotgun pleadings is that they fail to adhere to pleading requirements designed to ensure that a defending party is provided enough clarity to adequately respond, "making it nearly impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief."   *Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018).

Shotgun complaints typically present in four varieties:

> (1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a pleading that does not separate into a different count each cause of action or claim for relief; and (4) a pleading that

> asserts multiple claims against multiple defendants without specifying which defendant allegedly committed which claim.

*Adams v. Huntsville Hosp.*, 819 F. App'x. 836, 838 (11th Cir. 2020) (internal quotation marks omitted) (quoting and citing *Weiland*, 792 F.3d at 1321–23). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.

Daker should be familiar with the Eleventh Circuit's view on shotgun pleadings, as that court just last year affirmed dismissal of one of his many complaints on shotgun pleading grounds. *See Daker v. Bryson*, 848 F. App'x 884, 885 (11th Cir. 2021). There, "[t]he magistrate judge classified Daker's complaint as a shotgun pleading because it was impossible to identify which of the more than two dozen prison officials named as defendants were allegedly responsible for which act and what facts pertained to each claim for relief." *Id.* Here, Daker's pleading suffers a similar fate.

Daker's Complaint, although it expressly alleges that it "deals [with] facts arising at Smith State Prison," includes almost 70 pages of

allegations, some of which discuss incidents arising at Macon State Prison ("MSP") and Valdosta State Prison ("VSP"). *See* doc. 1 at 43-48. He names thirty-seven defendants along with unknown "John and Jane Doe" defendants. *Id.* at 7-8. However, he completely fails to identify which Defendants are responsible for much of the complained-of conduct. *See generally* doc. 1. His Complaint is "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the [37] defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam).

Ordinarily, the Court might afford Daker an opportunity to amend his Complaint to conform to the Federal Rules of Civil Procedure, but it may also dismiss the pleading without prejudice. *See Washington v. Dep't of Children & Families*, 256 F. App'x 326, 328 (11th Cir. 2007). Given Daker's history of vexatious litigation, his malicious claims included in this lawsuit, and this District's pending show cause, dismissal appears to be the most appropriate option. Therefore, Daker's Complaint should be **DISMISSED**, without prejudice, in its entirety.

## III.   CONCLUSION

Daker's Complaint should be **DISMISSED**, without prejudice. Doc. 1.  His motion to expedite this review is **DISMISSED, AS MOOT**. Doc. 13.  This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F.

App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED**,

this 14th day of September, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA