UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

WASEEM DAKER,       )
                    )
        Plaintiff,  )
                    )
v.                  )        CV 621-003
                    )
                    )
TIMOTHY WARD, *et al.*,  )
                    )
        Defendants. )

## ORDER

*Pro se* prisoner Waseem Daker[1] filed a 42 U.S.C. § 1983 Complaint

alleging various constitutional violations "arising at Smith State Prison"

("SSP").[2]  (*See* doc. 1 at 1.)  His Complaint was screened pursuant to 28

_____

[1] As the R&R noted, many courts have exhaustively described Plaintiff's litigiousness on many occasions.  *See* Daker v. Ward, 999 F.3d 1300, 1302 (11th Cir. 2021) (detailing Plaintiff's litigation history beginning after his conviction of aggravated stalking in 1996 and resulting imprisonment).  The Court will not so flatter him in the present order.  Instead, the Court merely notes that Plaintiff's own litigiousness has led to the limitations at issue here.  His own abuse of the judiciary *requires* limitations being placed upon his access to the courts.  *See* Daker v. Toole, ___ U.S. ___, 138 S. Ct. 234 (2017) (mem.) (U.S. Supreme Court directed its Clerk not to accept further noncriminal petitions from Daker unless the docketing fee is paid because Daker had "repeatedly abused this Court's process."); Daker v. Deal, No. 1:18-cv-5243, doc. 57 (N.D. Ga. Aug. 4, 2020) (filing injunction imposed), *aff'd Daker v. Governor of Georgia*, 2022 WL 1102015, at *2 (11th Cir. Apr. 13, 2022).

[2] Plaintiff also filed a Motion for Access to Photocopying, (doc. 3), and a Motion for Preliminary Injunction for access to photocopying, (doc. 4); both were denied.  (*See* doc. 7, adopted at 15.)  He appealed.  (*See* doc. 17.)  Plaintiff's pending appeal does not divest the District Court of jurisdiction over issues collateral to those on appeal,

U.S.C. § 1915A by the Magistrate Judge, who recommended that Plaintiff's case be dismissed. (Doc. 24.) The Magistrate Judge first found that Plaintiff's claims against the Georgia Department of Corrections (GDC) Defendants were duplicative, redundant, frivolous, and malicious. (Doc. 24 at 13.) Specifically, the Magistrate Judge found that Plaintiff seeks to raise the same policy-based claims against the GDC Defendants[3] as he did in <u>Daker v. Bryson</u>, No. 5:15-cv-88-TES-CHW, 2017 WL 11427081 (M.D. Ga. Dec. 29, 2017), *adopted* 2018 WL 9598914 (M.D. Ga. July 19, 2018), which were already referenced as duplicative and malicious in that 2017 case. Next, the Magistrate Judge recommended dismissal of the SSP Defendants[4] because Plaintiff's Complaint constitutes an "shotgun" pleading which is impermissible in the Eleventh Circuit. (*Id.* at 17.)

---

such as whether Plaintiff's case is duplicative and malicious. <u>Mahone v. Ray</u>, 326 F.3d 1176, 1179 (11th Cir. 2003).

[3] For ease of reference, the Court will adopt Daker's naming conventions for the Defendants. Therefore, the "GDC Defendants" includes Ward, Holt, Nix, Watson, Hogan, Koon, Toole, Stanton, McKinney, Ammons, Myrick, Crickmar, Shepherd, Barker, Lewis, Ioannou, Barron, and Turner, whom he has sued in individual and official capacities. (<u>See</u> doc. 30 at 3.)

[4] The "SSP Defendants" include Adams, McFarlane, Epperson, Brown, Jarriel, Whitfield, Jackson, Martin, Cox, Hartmeyer, Osborn, Mosley, Ramos, Hill, Hawkins, Champion, Waycaster, Thomas, Milton, Roberts, Robinson, Schleicher, and Wright. (<u>See</u> Doc. 30 at 4-6.)

Plaintiff's Objection to the R&R makes six arguments: (1) Plaintiff's RLUIPA claims are not barred by Eleventh Amendment Immunity; (2) Plaintiff's claims against the GDC Defendants are not duplicative or malicious; (3) even if the GDC allegations are duplicative, dismissal of the Smith State Prison Defendants is improper; (4) Plaintiff should be given an opportunity to amend his Complaint prior to dismissal; (5) Plaintiff's Amended Complaint, submitted contemporaneously with his Objection, corrects the shotgun pleading deficiencies; and (6) dismissal without prejudice of his claim on shotgun pleading grounds is effectively a dismissal with prejudice because the statute of limitations has run on many of his claims.  (Doc. 33.)

Plaintiff's Amended Complaint, which he filed "as a matter of course" pursuant to Rule 15(a) supersedes his original Complaint, thus mooting the Magistrate Judge's R&R examining the viability of Plaintiff's allegations pursuant to 28 U.S.C. § 1915A. Coventry First, LLC v. McCarty, 605 F.3d 865, 869 (11th Cir.2010) ("[A] plaintiff [has] the right to amend a complaint once as a matter of course, so long as no responsive pleading has been filed."). The First Amended Complaint is thus the operative pleading in this matter and must be examined under

3

Section 1915A.  See Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 601 (5th Cir. 1981).  The Court, therefore, **DECLINES TO ADOPT** the R&R as moot.  (Doc. 24.)  Nevertheless, Daker's Amended Complaint suffers from the same deficiencies as its predecessor: it brings duplicative claims against the GDC Defendants, and it constitutes an impermissible shotgun pleading.

## I.     Duplicative Allegations Against GDC Defendants

The Magistrate Judge found that Plaintiff's claims against the GDC Defendants were duplicative in violation of the PLRA.  (Doc. 24 at 13-17.) In response, Plaintiff argues that the present case is not duplicative of prior lawsuits because this case is based on different and more recent incidents occurring on different dates.  (Doc. 33 at 7-11.)  Therefore, he claims that "res judicata" should not apply.  (Id. at 8.)  Moreover, he argues that because the prior cases were dismissed without prejudice, the present claims are not duplicative and he should not be precluded from having his day in court as to them.  (Id. at 12.)  He also asserts that the Magistrate Judge erred in finding that Eleventh Amendment Immunity bars Section 1983 claims against the GDC Defendants because he also alleges RLUIPA claims against them.  (Id. at 2.)

Even considering Plaintiff's objections to the moot R&R, the Court finds that dismissal is appropriate. First, Plaintiff's fixation on whether government entities may be sued under RLUIPA is misguided. Even if Plaintiff's RLUIPA claims are not barred by Eleventh Amendment Immunity, he is barred from bringing them by the PLRA, which prohibits repetitious litigation of virtually identical causes of action. See Daker v. Ward, 999 F.3d at 1308 (citing, inter alia., Bailey v. Johnson, 846 F.2d 1019, 1021 (5th Cir. 1988). The PLRA grants district courts "especially broad discretion" in determining whether a dismissal for frivolousness or maliciousness is warranted under the PLRA. Bailey, 846 F.2d at 1020-21 (internal quotation marks and citation omitted). Plaintiff has litigated his RLUIPA claims many times and for many years. Daker v. Ward, 999 F.3d at 1302 n. 1 (citing Daker v. Wetherington, No. 1:01-cv-3257 (N.D. Ga. Nov. 28, 2001) and noting its challenge to the GDC's grooming policy under the First Amendment and RLUIPA). Plaintiff here "merely repeats pending or previously litigated claims," and he is barred by the PLRA from repeatedly asserting the exhaustively litigated issues related to the general lawfulness of GDC policies because doing so constitutes abusive and malicious behavior. Daker v. Ward, 999 F.3d at 1306, cert.

denied, 142 S. Ct. 2716 (2022). Thus, his case is dismissible upon those grounds alone.

In response, Plaintiff argues that, because his cases have been dismissed "without prejudice," he has been affirmatively provided opportunity to pursue claims against GDC Defendants concerning the lawfulness of policies which are relevant to his segregation in Tier II at different prisons on different dates, because they remain germane to discreet actions taken pursuant to those policies, which he alleges deprive him of his rights. (Doc. 30 at 7; doc. 33 at 12-13.) He asserts this argument relying on Georgia res judicata principles, but that reliance is mistaken. (Id. at 8.)

"Federal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction." CSX Transp., Inc. v. Brotherhood of Maint. of Way Emps., 327 F.3d 1309, 1316 (11th Cir. 2003). Under federal law, res judicata can be applied only if all of four factors are shown: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes

of action." <u>E.E.O.C. v. Pemco Aeroplex, Inc.</u>, 383 F.3d 1280, 1285 (11th Cir. 2004) (quoting <u>In re Piper Aircraft Corp.</u>, 244 F.3d 1289, 1296 (11th Cir.2001)).

There is no dispute as to whether the Middle District constitutes a Court of competent jurisdiction.   As to the second factor, the court's analysis of most of Plaintiff's cases has indeed been limited by the Plaintiff's own failure to heed court orders or his repeated failure to state viable claims (which has resulted in dismissals without prejudice). However, he is barred from realleging those claims because he has litigated them before, and he lost.   Specifically, Plaintiff brought policy-based claims in *Daker v. Owens*, No. 5:12-cv-459-CAR-MSH (M.D. Ga. Nov. 20, 2012).   Known to the Courts in this circuit as "<u>Daker I</u>,"[5] this case was dismissed **with** prejudice due to Plaintiff's failure to abide by Court order under Rule 41(b), a decision affirmed by the Eleventh

---

[5] "Daker I" is so-called because it appears to be the first of many complaints Daker filed in the district courts in Georgia since being reincarcerated in 2012 that alleged, *inter alia*, claims arising out of forced shaving to enforce GDC's grooming policy.   His Amended Complaint in that case sought to raise, inter alia claims regarding: (1) religious books and publications, (2) a Jpay tablet computer used to email spiritual advisors, (3) religious observances such as Jumu'ah, Talim, and the Eid holiday salat and feast, (4) religious materials such as Islamic prayer oils, a miswak toothbrush, and a digital Quran.   Daker's complaint in this case alleged the denial of many of these same items, but he alleges that because the deprivation occurred at a different prison, he should be allowed to proceed.

Circuit.  Id., aff'd Daker v. Comm'r, Ga. Dep't of Corr., 850 F. App'x 731, 733 (11th Cir. 2021).  The Eleventh Circuit also approved the dismissal of a substantially similar complaint Plaintiff brought soon after Daker I, specifically agreeing that the claims brought were duplicative and malicious under 28 U.S.C. 1915(e)(2)(B), which applies here.  See Daker v. Bryson, 841 F. App'x 115, 120-21 (11th Cir. 2020) ("Daker II").[6] Plaintiff asserts that even in Daker I, the courts have so far failed to reach the merits of his policy claims because it was not dismissed on the merits.  Thus, he argues that his claims are not precluded.

"Unless the dismissal order states otherwise, a dismissal [under Federal Rule of Civil Procedure 41(b)] — except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 — operates as an adjudication on the merits."  Fed. R. Civ. P. 41(b).

---

[6] Even though Daker II was dismissed without prejudice, its holding that the GDC claims asserted were duplicative is instructive, as they are virtually the same claims brought in the present matter. As in Daker II, "almost every single allegation related to the conduct of the GDC Defendants and the Doe Defendants is clearly and directly duplicative of the allegations Plaintiff made in the superseding amended complaint in Daker I." Daker v. Bryson, No. 5:16-cv-0538-TES-MSH, 2017 WL 11457276, at *3 (M.D. Ga. June 8, 2017), modified on reconsideration sub nom. Daker v. Comm'r Homer Bryson, No. 5:16-cv-538-TES-MSH, 2017 WL 3584910 (M.D. Ga. Aug. 17, 2017), and aff'd, 841 F. App'x 115 (11th Cir. 2020). The Court there noted Plaintiff's opportunity to argue on appeal whether he had the "opportunity to fully litigate the claims alleged in the present Complaint." Daker v. Comm'r Homer Bryson, No. 5:16-cv-538-TES-MSH, 2017 WL 11457276, at *4..

Although a 41(b) dismissal is not always dispositive of the "adjudication on the merits" element of res judicata, see Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 503 (2001), traditional interests underlying res judicata justify giving preclusive effect to the 41(b) dismissal in Daker I, even without sole reliance upon the text of 41(b). See Tuitama v. Bank of Am., NA, 552 F. App'x 881, 883–84 (11th Cir. 2014) (citing Nasser v. Isthmian Lines, 331 F.2d 124, 128 (2d Cir. 1964) ("[E]ven if this result were not required by the terms of Rule 41(b), it would seem necessary as a matter of sound judicial administration.") (footnote omitted)); 18A Fed. Prac. & Proc. Juris. § 4440 (3d ed.) (noting that the purpose of establishing "a strong sanction to enforce compliance with proper procedure[—][q]uite apart from Rule 41(b)[—]would suggest that penalty dismissals often should preclude a second action on the same claim."). Moreover, the rare circumstances confronted by the Court in this case support the conclusion that dismissals like the one at issue are preclusive. See id. ("In circumstances of continuing conduct, complete freedom to bring a second action might allow repeated harassment without any effective penalty for dilatory pursuit of prior litigation.")

To clarify, in <u>Daker I</u>, Plaintiff had his chance to litigate the Tier II policy claims and other policy-based claims (noted in footnote 2 of this order) which impact his exercise of religion–brought under RLUIPA or the Constitution. The <u>Daker I</u> Court specifically directed him to file an amended complaint, asserting only three claims which it determined still viable after its frivolity review: (1) First Amendment access to Courts; (2) Denial of due process incident to placement in Tier II; and (3) RLUIPA claims related to the denial of opportunity to worship. <u>Daker v. Owens</u>, No. 5:12-cv-459-CAR-MSH, doc. 234 at 8 (M.D. Ga. Aug. 17, 2016). After expressing concern that he would waive his other arguments by not including them in the amendment, Plaintiff was informed that he could pursue any disposition on appeal. <u>Id</u>. But he failed to heed an explicit court order regarding his amendment, and his case was dismissed pursuant to Rule 41(b). <u>Daker v. Owens</u>, No. 5:12-cv-459-CAR-MSH (M.D. Ga. May 8, 2017). He appealed, and when he raised his complaints about his inability to amend, the Eleventh Circuit was unconvinced, finding that the district court properly limited his ability to amend. <u>Daker v. Comm'r, Georgia Dep't of Corr.</u>, 850 F. App'x 731, 733 (11th Cir. 2021).

Meanwhile, the Middle District severed the Daker II claims which were relevant to incidents occurring at prisons in the Southern District. Thus, at that time, Plaintiff's viable claims in the Southern District were those relevant to events occurring here. However, once in the Southern District, Plaintiff again pursued his RLUIPA and Section 1983 policy-based claims against GDC Defendants. He again failed to heed a court order and (then) Magistrate Judge Baker recommended dismissal of his transferred case, which was adopted. Daker v. Bryson, No. 6:17-cv-079-JRH-BWC, doc. 30 (S.D. Ga. Sept. 18, 2017), adopted doc. 42 (S.D. Ga. Dec. 6, 2017). Plaintiff appealed, again arguing that the Middle District erred by dismissing several of his claims as malicious because they were duplicative. He was unsuccessful. See Daker v. Bryson, 841 F. App'x 115, 120-21 (11th Cir. 2020). Magistrate Judge Cheesbro faced those claims (which Plaintiff also brings here) in Daker v. Head, No. 6:14-cv-047 (S.D. Ga. May 19, 2014). After severing and transferring many of Plaintiff's claims, including his requests for injunctive relief from the GDC Defendants, the Court allowed Plaintiff to proceed "on his claims for damages for alleged constitutional violations he suffered *in this district*," Daker v. Head, 6:14-cv-047, doc. 90 at 2 (S.D. Ga. Feb. 27, 2019)

11

(emphasis added).   The Court limited Plaintiff's ability to amend his
Complaint several times, including limiting his ability to "supplement his
Complaint . . . to include Plaintiff's claims arising from his subsequent
Tier II placements."   (Doc. 29 at 7) (citing <u>Daker v. Head</u>, 6:14-cv-047,
docs. 234, 275, 354, 420 (S.D. Ga. May 19, 2014).   That case was dismissed
on September 30, 2022, again for failure to follow court order.   <u>Daker v.
Head</u>, 6:14-cv-047, doc. 505 (S.D. Ga. Sept. 30, 2022).   Now Plaintiff
argues he should be allowed to bring subsequent Tier II placement claims
in this case, complaining that Magistrate Judge Ray improperly found
his Tier II claims to be "strikingly similar" or "duplicative" of those claims
which Judge Cheesbro did not allow him to bring in <u>Daker v. Head</u>, 6:14-
cv-047 (S.D. Ga. May 19, 2014).   (Doc. 29 at 7.)

  This diversion into Plaintiff's litigation and procedural history is
vital to determining whether there has been a final judgment on the
merits of Plaintiff's policy-based claims against the GDC Defendants.   It
dispels any notion that Plaintiff has been unable to litigate his claims
against them.   The only substantive differences in the allegations of this
case and prior cases, including <u>Daker v. Head</u>, 6:14-cv-0047 (S.D. Ga.
May 19, 2014), are the specific prison where Plaintiff encountered the

alleged state-wide policy, the timing of the occasions when Plaintiff has allegedly been harmed by that policy, and the state actors enforcing the allegedly unlawful policy.   Plaintiff concedes this.   (Doc. 33 at 8-9). Therefore, he effectively concedes that he has had his "day in court" to argue those policy-based claims against the GDC Defendants not located at the relevant prison.   Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1239 (11th Cir. 1999) (holding that the principal test in the Eleventh Circuit for "determining whether the causes of action are the same is whether the primary right and duty are the same in each case.").

Plaintiff also concedes that the present GDC defendants simply include "successors to state actors from previous lawsuits." (Doc. 33 at 9.) Nonparty preclusion may be justified based on a variety of pre-existing "substantive legal relationship[s]" between the person to be bound and a party to the judgment.   Taylor v. Sturgell, 553 U.S. 880, 894 (2008) (quoting D. Shapiro, Civil Procedure: Preclusion in Civil Actions 77–78 (2001); Richards v. Jefferson Cnty., Ala., 517 U.S. 793, 798 (1996). In like fashion, successors in office clearly constitute privies for the purposes of preclusion of claims against them in their official capacity.[7]   Indeed,

---

[7] Plaintiff makes no plausible allegation of individual capacity claims against the

"[t]he mere fact that there has been a change in the person holding the office does not destroy the effect of the thing adjudged." <u>City of New Orleans v. Citizens' Bank of Louisiana</u>, 167 U.S. 371, 389 (1897). Consequently, the third element of res judicata requiring the involvement of the same parties or their privies is met. As to the fourth res judicata element, the above summary of Plaintiff's recent proceedings clearly indicates that Plaintiff has attempted to bring the same policy-based RLUIPA and Section 1983 claims against the GDC officials for years. He is thus precluded from bringing them in this case.[8]

---

GDC Defendants occurring in this venue because Plaintiff has failed to allege the GDC Defendants personally participated in the incidents occurring at Smith State Prison. Claims against supervisory officials in their official capacity are cognizable under § 1983 if the challenged conduct results from an official policy or custom or if the official is a final policymaker regarding the challenged conduct. <u>Scala v. City of Winter Park</u>, 116 F.3d 1396, 1399–1401 (11th Cir. 1997). This is precisely what Plaintiff repeatedly claims. However, in their individual capacity, supervisory officials like the GDC Defendants are liable only if they "personally participate in the alleged unconstitutional conduct or . . . there is a causal connection between the actions of [the] supervising official and the alleged constitutional deprivation." <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003), abrogated in part on other grounds by <u>Randall v. Scott</u>, 610 F.3d 701 (11th Cir. 2010); see also <u>Douglas v. Yates</u>, 535 F.3d 1316, 1322 (11th Cir. 2008). Plaintiff's fails to make any plausible argument that the GDC Defendants did either, but only complains that the "GDC Management Team" transferred him to Smith state prison and placed him in Tier II based on his prior placement in Tier II at Valdosta State Prison, presumably due to GDC policy. (Doc. 33 at 6.) Claims of transfer, without more do not constitute violations. <u>Daker v. Bryson</u>, No. 5:15-cv-88-TES-CHW, 2017 WL 11427081, at *3 (M.D. Ga. Dec. 29, 2017) (admonishing Plaintiff's attempt to hold the GDC Defendants liable for establishing policies or customs that "allowed" the allegedly unconstitutional conduct at GSP to occur.)

[8] The Middle District of Georgia already determined that res judicata may be

Even if Plaintiff is not precluded from litigating the merits of the underlying GDC claim, he is certainly precluded from alleging, as he does here, that they are so intrinsically tied to the separate instances of deprivation he endured that they must be brought in multiple, duplicative actions and are therefore not malicious.   (See doc. 30 at 6.) The prior failure of this argument was central to the analysis of and decision to dismiss many of his policy-based claims against the GDC Defendants in Daker v. Bryson, No. 5:15-cv-88-TES-CHW, 2017 WL 11427081, at *5 (M.D. Ga. Dec. 29, 2017) ("It is thus apparent that nearly every allegation related to the conduct of the GDC Defendants in this case repeats the allegations Plaintiff made in the cases cited above."); see, e.g., Glob. NAPs, Inc. v. Verizon New England Inc., 603 F.3d 71, 95 (1st Cir. 2010) (Where party committed willful discovery misconduct and default judgment was entered, party was precluded from relitigating whether he willfully engaged in discovery misconduct, even though he was not precluded from litigating the underlying claim.).

---

implicated by Plaintiff's GDC allegations.   Daker v. Bryson, No. 5:15-cv-88-TES-CHW, 2017 WL 11427081, at *5 (M.D. Ga. Dec. 29, 2017).

Thus, not only is Plaintiff barred by the PLRA from further filing "knowingly duplicative" complaints, but he is also precluded from bringing policy-based claims against the GDC Defendants under federal common law claim preclusion.   And, even though the courts have dismissed him without prejudice many times, and even if the policies he disputes were enforced on more recent occasions at different prisons, he may not continue to attempt to litigate the policy's lawfulness again and again because he is precluded from doing so.  Likewise, he may not blame the Courts for his own repeated failure to heed court orders long enough for the Court to evaluate his claims.  <u>Tuitama</u>, 552 F. App'x at 883 (collecting cases and finding that "federal law . . . clearly dictates that dismissal for failure to prosecute or for noncompliance with a court order is a judgment on the merits with claim-preclusive effect.").   In other words, Plaintiff has so frustrated the purpose of Section 1983 (and other statutes which protect prisoner litigants) that remedies which could have been available to him are now out of reach.  While Plaintiff blames the Court's "flip flopping" (doc. 29) for these defaults, he fails to make a meritorious argument that his policy-based claims against the GDC

Defendants remain viable.   Therefore, they are **DISMISSED with prejudice**.[9]

## II.   All other Claims

The Magistrate Judge found additional grounds for dismissal of Plaintiff's Complaint, especially concerning Plaintiff's allegations against the SSP Defendants: Plaintiff's Complaint was a shotgun pleading. Plaintiff concedes that his Complaint is a shotgun pleading. (See doc. 33 at 16.)  He filed an Amended Complaint which he alleges corrects the deficiencies noted by the Magistrate Judge. (Doc. 30.)  Plaintiff claims that his Amended Complaint properly identifies which Defendants personally participated in specific events and which Defendants are responsible for which policies and customs in general, as well as identifies the Defendants in relation to the specific claims against them. (Doc. 33 at 17.)  Relatedly, Plaintiff argues that even if the claims against the GDC Defendants are dismissed, his other claims should survive, especially now that they are properly alleged. (Doc. 33 at 16.)

---

[9] Generally, a district court must give the plaintiff notice of its intent and an opportunity to respond prior to sua sponte dismissing a claim with prejudice.  Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011).  However, the general rule against dismissal with prejudice without notice does not apply if the claim is patently frivolous or if amendment would be futile.  Id.

The Court has reviewed Plaintiff's First Amended Complaint. (Doc. 30.) It fails to correct the filing deficiencies noted by the Magistrate Judge. Instead, Plaintiff has repeated tactics for which he has been admonished previously. See, e.g., Daker v. Bryson, 848 F. App'x at 885 ("[W]e can affirm on the alternative ground that his complaint was an impermissible shotgun pleading."). For example, Plaintiff bears a mistaken belief that any adverse action taken against him, or any frustrating condition encountered by him in prison constitutes an unlawful act for which he should pursue a claim. (See doc. 30 at 56, complaining of lack of access to Sensodyne brand toothpaste). Thus, he argues that he should be able to either compile all his grievances into one case or file hundreds of separate cases alleging similar but separate instances of adverse action against not only local prison officials but the GDC Defendants as well. (See, e.g., doc. 29.) Consequently, even when Plaintiff's allegations constitute something more than *de minimis* acts, he buries his potential claims within the hundreds of pages of filings where he also asserts other claims which are clearly impermissible, duplicitous, and malicious. (See doc. 30 at 77 (RLUIPA claims against GDC Defendants), 79 (First Amendment Claims against GDC officials

regarding existence of multiple policies).)  In this instance, he failed to restrict his allegations to those which are not malicious,  just as he did in <u>Daker II</u>, just as he did in <u>Daker v. Bryson</u>, 848 F. App'x at 885 ("The magistrate judge classified Daker's complaint as a shotgun pleading because it was impossible to identify which of the more than two dozen prison officials named as defendants were allegedly responsible for which act and what facts pertained to each claim for relief."), and just as he did in <u>Daker v. Head</u>, 6:14-cv-047 (S.D. Ga. May 19, 2014).  In fact, he does not mention his transfer to SSP until page 43 of his Amended Complaint.

This behavior makes it impossible to ascertain which allegations are against whom.  Federal Rule of Civil Procedure 8(a)(2) provides that to state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Plaintiff did not provide the Court with such a plain statement.  This defect is not corrected by Plaintiff's addition or deletion of pages or his unintelligible labeling system of reference to corresponding sections within his one-hundred-page pleading.  (<u>See, e.g.</u>, doc. 30 at 76-86, "Statement of Claims" Section, listing Defendants supposedly liable for corresponding sections elsewhere located within the

19

Complaint.).[10] Attempting to analyze Plaintiff's narrative in the manner
he suggests places undue burden on the Court. See Reese v. Herbert, 527
F.3d 1253, 1268 (11th Cir. 2008) (citing Smith v. Lamz, 321 F.3d 680, 683
(7th Cir. 2003) ("[j]udges are not like pigs, hunting for truffles buried in
briefs.")); Lowrance v. Berryhill, 2019 WL 1085187, at *1 (S.D. Ga. Mar.
7, 2019) ("The Court is under no obligation to do the work of
manufacturing a claim for judicial review for plaintiff.").

Plaintiff's final argument is that dismissal without prejudice is
unfair when the Court's "twenty-month delay" in conducting the Section
1915A review may cause him to forego his claims due to the running of
the statute of limitations.  (Doc. 33 at 21.)  Plaintiff  relies on the
disposition in Daker v. Warren, 779 F. App'x 654, 657 (11th Cir. 2019),
wherein the Court held that the district court erred when it determined
that Plaintiff's allegation of poverty was untrue and dismissed without
providing him notice and an opportunity to respond. Id.  Even though
that case was dismissed without prejudice, Plaintiff was effectively
barred from refiling his civil action because the statute of limitations had

_____

[10] For example, the first section located under the Statement of the Claim section
purports to identify Defendants allegedly responsible for acts described in sections A-
E of the Complaint, contained on pages 9-28.  (Doc. 30 at p. 76.)

run. Id. Reasoning that precedent suggests that a prisoner is entitled to notice and an opportunity to respond before having his case dismissed with prejudice, the Eleventh Circuit found that the district court should have afforded Plaintiff an opportunity to be heard. Id.

In this case, Plaintiff's Amended Complaint is being dismissed because he has maliciously filed it in abuse of the judicial process—not on "purely technical grounds" as in Daker v. Warren, 779 F. App'x 654. (Doc. 33 at 8.)  One of the ways he has abused the judicial process is by filing duplicitous shotgun complaints, intermingling allegations that may have merit with those that do not, in an attempt to relitigate his meritless and repetitive policy-based claims.   Moreover, he *has been allowed amendment*, (see doc. 30), but his persistent attempts to avoid, rather than address, the shotgun character of his pleading confirm the futility of further opportunities to amend. Coventry First, LLC, 605 F.3d at 870. "[W]hen an individual litigant has placed an unreasonable burden on the Court's resources through abusive action, it must take action to end the abuse." Daker v. Deal, No. 1:18-cv-5243-WMR, 2020 WL 5792472, at *2 (N.D. Ga. Aug. 4, 2020), aff'd sub nom. Daker v. Governor of Georgia, No. 20-13602, 2022 WL 1102015 (11th Cir. Apr. 13, 2022).

Plaintiff has been given years of opportunities to properly plead his case. He has been heard. Ultimately, Plaintiff has been given notice and instructions, both by this Court—specifically in the R&R—and by every other federal court in this state, including the Eleventh Circuit, on which claims he may continue to pursue. He is not due further amendment or notice in this case. See Daker v. Bryson, 848 F. App'x at 885 ("We find no error in disallowing further amendments, even though the dismissal of Daker's amended complaint operated as a dismissal with prejudice.").

District courts are empowered to control their docket and "ensure the prompt resolution of lawsuits," including the ability to dismiss shotgun pleadings. Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018) (citing Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015)); see also 28 U.S.C. § 1915(e)(2)(b)(ii) (requiring the court dismiss the case at any time if the court determines that the action fails to state a claim.). The Magistrate Judge recommended dismissal without prejudice and without giving Plaintiff an opportunity to amend, but Plaintiff filed his Amended Complaint anyway. Although Plaintiff's disregard of that directive has not gone unnoticed, the Court has considered his Amended Complaint and finds it

equally defective.   Thus, claims against the SSP Defendants are **DISMISSED** without prejudice as shotgun pleadings.

Finally, Plaintiff filed his Complaint on January 1, 2021, in flagrant disregard of the Northern District of Georgia's August 4, 2020 Order of Permanent Injunction. <u>Daker v. Deal</u>, No. 1:18-cv-5243-WMR, doc. 57 (N.D. Ga. Aug. 4, 2020), <u>aff'd sub nom. Daker v. Governor of Georgia</u>, No. 20-13602, 2022 WL 1102015 (11th Cir. Apr. 13, 2022).   In that Order, Judge William Ray mandated, *inter alia,* that Plaintiff include with "every lawsuit he files *in this or any other federal court*" (1) a copy of the injunction and (2) a list of each and every lawsuit, habeas corpus petition, and appeal that he has filed in any federal court, along with the final disposition of each lawsuit, petition or appeal.   <u>Id.</u>   Upon filing his Complaint, Plaintiff did neither of these things. (See doc. 1.)  His partial compliance in attaching a list of cases to his Amended Complaint did not completely satisfy the requirements of the injunction.

Even though Plaintiff did appeal the Order of Injunction, he did not request a stay of that injunction pending the appeal.   Consequently, he was bound by its requirements even before the Eleventh Circuit reviewed them.   He continues to be bound by them considering the appellate court's

decision affirming the injunction and its application to all federal courts. But, once again, he did not comply. Indeed, the Eleventh Circuit conclusively held that the injunction "operate[s] continuously and perpetually upon' and is "binding upon [Daker] . . . throughout the United States." Daker v. Governor of Georgia, No. 20-13602, 2022 WL 1102015, at *2 (11th Cir. Apr. 13, 2022) (citing Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 451 (1932)). Given Plaintiff's well-known litigation tactics and malicious behavior, strict compliance with the permanent injunction is required. Therefore, the Court alternatively finds that Plaintiff's case should be dismissed for failure to comply with court order.

## CONCLUSION

Plaintiff's claims against the GDC Defendants are malicious, duplicative, and precluded by prior suits. Thus, they are **DISMISSED** with prejudice. Moreover, his Amended Complaint is an impermissible shotgun pleading and is **DISMISSED** on those grounds without prejudice against the SSP Defendants. Similarly, Plaintiff's Motion to Expedite 28 U.S.C. § 1915A Review is **DENIED as MOOT** in light of the Court's dismissal. As well, Plaintiff's Motion for "Judges and Magistrates

of this Court to Stop Flip-Flopping as to Whether Multiple Tier II Due Process and Conditions of Confinement Claims are Dissimilar or Similar and to Decide Whether Plaintiff Should Litigate Them Separately or Together," (doc. 29) is **DENIED.** This Motion seeks no available remedy, makes no request for practicable relief, and consists of "baseless criticisms of the judges of this Court and complaints about rulings in other cases." Daker v. Head, 6:14-cv-047, doc. 516 at 2, (S.D. Ga. May 19, 2014). The Clerk is directed to **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 3rd day of January, 2023.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA